**KEITH D. KARNES**, OSB No. 033521
keith@rankkarneslaw.com
Rank & Karnes Law, P.C.
2701 12th St. SE
Salem, OR 97302
Tel: 503-385-8888
Fax: (503) 385-8899

**KEVIN J. RANK**, OSB No. 914034
kevin@rankkarneslaw.com
Rank & Karnes Law, P.C.
2701 12th St. SE
Salem OR 97302
Tel: 503-385-8888
Fax: 503-385-8899

**BRADY MERTZ,** OSB No. 970814
brady@bradymertz.com
Brady Mertz PC
345 Lincoln St SE
Salem OR 97302
Tel: 503-385-0121
Fax: 503-375-2218

**RICK KLINGBEIL,** OSB No. 933326
rick@klingbeil-law.com
Rick Klingbeil PC
1826 NE Broadway
Portland OR 97232
Tel: 503-473-8565

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| IN RE: | Case No. 19–60230-pcm11 |
| WILLIAM JOHN BERMAN, | Adv. Pro. No. 19-06026-pcm |
| Debtor | MEMORANDUM IN SUPPORT OF |

Page 1 - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 51    Filed 02/24/20

|                                                    | MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6) |
|---|---|
| LOREN HATHAWAY, on behalf of himself and all others similarly situated; GENNISE HATHAWAY, on behalf of herself and all others similarly situated; and HEATHER NOBLE, on behalf of herself and all others similarly situated<br><br>                          Plaintiffs<br>      v.<br><br>WILLIAM JOHN BERMAN,<br><br>                          Defendant | |

## I. INTRODUCTION

Plaintiffs / Class Representatives ("Plaintiffs") by separate motion move for Summary Judgment on their Complaint for Non-Dischargeability of Debt pursuant to 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6).

## II. MEMORANDUM

**1. Debts arising from false pretenses, a false representation, or actual fraud are non-dischargeable. 11 U.S.C. §523(a)(2)(A).**

The United States Bankruptcy Code has long contained provisions barring relief to debtors whose debts or liabilities arose from fraud, dishonesty, or other enumerated types of misconduct. The Code embodies the basic policy of

Page 2 - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 51    Filed 02/24/20

"affording relief only to an 'honest but unfortunate debtor.'" *Cohen v. de la Cruz,* 523 U.S. 213 at 215 (1998). Section 523(a)(2)(A) continues that tradition, excepting from discharge "any debt ... for money, [or] property, *** to the extent obtained by ... false pretenses, a false representation, or actual fraud."

The term "false pretenses" is defined as "conscious deceptive or misleading conduct calculated to obtain, or deprive, another of property." *Kovler*, 249 B.R. 238, 261 (Bankr. S.D.N.Y. 2000). It is the practice of any "scam, scheme, subterfuge, artifice, deceit, or chicanery in the accomplishment of an unlawful objective" on behalf of the defendant. *Id.* A false pretense also includes an implied misrepresentation or conduct intended to create a false impression. *In re Bozzano*, 173 B.R. 990, 993 (Bankr. M.D.N.C. 1994).

Failure to disclose material facts on which a transaction depends constitutes false pretenses within the statute. *In re Soliz*, 201 B.R. 363, 369 (Bankr. S.D.N.Y. 1996). "'False pretenses, a false representation, or actual fraud' does not always require an express misrepresentation. For example, 'a debtor's misleading conduct intended to convey an inaccurate impression may constitute false pretenses.'" *Daniel v. Del Valle (In re Del Valle),* 577 B.R. 789 (Bankr. C.D. Cal. 2017) quoting from *In re Higashi* , 553 B.R. 153 (Bankr. D. Hawaii 2016). See, also, *Kane v. Torres (In re Torres*, 2011 WL 381038 at *5 (Bankr. D. Haw. 2011); *In re Russell*, 203 B.R. 303, 312 (Bankr. S.D. Cal. 1996) ("'False representation' is express misrepresentation, while 'false pretense' refers to

Page 3 - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 51    Filed 02/24/20

implied misrepresentations or conduct intended to create and foster false impression.")

A false pretense involves an implied misrepresentation, or conduct intended to create or foster a false impression, and can include a "mute charade," where the debtor's conduct is designed to convey an impression without oral representation. *In re Felton*, 197 B.R. 881 (N.D. Cal. 1996); *Germain Lincoln Mercury v. Begun (In re Begun),* 136 B.R. 490, 494 (Bankr. S.D. Ohio 1992).

A debtor's intent to defraud may be established by circumstantial evidence or by interferences drawn from their course of conduct. *Fogal Legwear of Switz., Inc. v. Wills*, 243 B.R. 58, 64 (9th Cir. BAP 1999). A court may determine intent to defraud under Section 523(a)(2)(A) based on the totality of the circumstances when the trier of fact is convinced by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

### A. *Cohen v. De La Cruz (In re Cohen)*, 106 F.3d 52 (3d Cir. 1997) *aff'd*, 523 U.S. 213 (1998) is instructive on the facts before this court.

In *Cohen v. De La Cruz (In re Cohen),* 106 F.3d 52 (3d Cir. 1997), *aff'd*, 523 U.S. 213 (1998), Mr. Cohen owned apartment buildings in New Jersey. A rent control ordinance established the allowable rent for the units. Mr. Cohen charged tenants at the rent-controlled units more than was allowed by the ordinance.

Mr. Cohen admitted that when he purchased the property, he was aware that the rent control ordinance existed. He claimed, however, that he never

**Page 4** - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 51    Filed 02/24/20

inquired about its requirements nor was he advised of its provisions. He testified that he knew he could not raise rents more than 6% per year, but claimed to believe that he could charge new tenants any amount up to fair market value. Instead, the Act limited the amount of rent Mr. Cohen could charge existing *and* new tenants.

The Hoboken Rent Control Administrator determined that Mr. Cohen had violated the Act. He was ordered to refund amounts totaling $31,382.50. In response, Mr. Cohen filed a Chapter 7 bankruptcy claim seeking to discharge the debt.

On a creditors' complaint for non-dischargeability, the appeals court affirmed the district court's conclusion that Mr. Cohen committed fraud within the meaning of 11 U.S.C. §(s) 523(a)(2)(A):

> The court found that Cohen, despite being represented by counsel, recklessly made no effort to investigate the statute and selectively inquired about its application. The court further found that Cohen conveniently understood that the ordinance allowed him to surcharge his tenants for increases in water bills and taxes and he knew where he could apply for such relief. Cohen claimed, however, that he did not think to investigate how much he could charge new tenants. Based on these facts, the bankruptcy court found that Cohen had selectively understood and applied the provisions of the ordinance that were to his benefit, but wilfully failed to ascertain the less advantageous provisions. On the basis of Cohen's admittedly selective understanding of the statute, the bankruptcy court concluded that he had committed fraud within the meaning of the bankruptcy code." *Cohen v. De La Cruz (In re Cohen),* 106 F.3d 52 (3d Cir. 1997).

**Page 5** - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 51    Filed 02/24/20

The facts now before this court are substantially more compelling than those supporting non-dischargeability in *Cohen*. *Cohen*, nevertheless, is instructive regarding the application of 11 U.S.C. §523(a)(2)(A) to this case.

**B.     Mr. Berman[1] obtained funds from Class Members through false pretenses and false representation.**

Here, as in *Cohen*, Mr. Berman was at all times represented by legal counsel. (Facts 7, 8). Also, like *Cohen*, Mr. Berman recklessly failed to investigate the applicable landlord-tenant laws – even though ownership and management of the Park had been his primary occupation for the past 15 years, and the primary business of his two companies, B. & J. and BBM. (Facts 6 - 8, 13, 20 – 23, 29 – 40).

Next, like *Cohen*, Mr. Berman admitted to a limited and selective understanding of landlord tenant law - mainly to the extent he could apply the laws to the Park's benefit. (*Id.,* see especially, Facts 22, 23, 29 - 33). Finally, like *Cohen*, Mr. Berman claimed failure to understand the less advantageous provisions of the law, including those he violated.  (*Id.*)

This Court should find, consistent with *Cohen*, that Mr. Berman committed fraud within the meaning of 11 U.S.C. §523(a)(2)(A). Consequently, none of his debt incurred as a result of the inflated utility charges or the unlawful meter reading fees should be discharged.

---

[1] The Class pled and proved at the "piercing trial" before Judge Graves in the *Hathaway* case that the acts and misconduct of the company managing the Salem RV Park, Better Business Management, were the acts and misconduct of Mr. Berman.  (Facts 18, 22, 25, 26).

**Page 6**  - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 51    Filed 02/24/20

**C. The facts in this case go far beyond those in *Cohen*. Judge Graves found that Mr. Berman made false statements (and caused his employees to make them) and engaged in deceitful behavior regarding electric bills and meter reading charges.**

**i. Unlawful electrical service charges.**

Judge Graves found - *by clear and convincing evidence* - that Mr. Berman directed Park staff to violate the statute and mislead tenants regarding the per kilowatt hour charges for electricity:

> "*** Mr. Berman caused BBM to violate ORS 90.315(4) through his own contrived plan to 'avoid losing money on electrical charges' that BBM owned to its utility provider. He directed BBM staff to charge tenants a higher rate per KWH than the utility provider charged BBM. The evidence revealed that Mr. Berman instructed staff to inform tenants they would be charged .12c [12 cents] per KWH, which they were told was the same rate the utility charged BBM. That was patently false. (Fact 22).

Judge Graves' factual findings establish as a matter of law that Mr. Berman obtained inflated payments for electrical services using false pretenses and/or false statements. The Judge's findings also show fraudulent intent. The debt associated with the electricity overcharges is non-dischargeable under 11 U.S.C. §523(a)(2)(A).

**ii. Unlawful meter reading fees.**

Judge Graves also found that Mr. Berman misled Class Members regarding meter reading fees:

> "The landlord also charged each tenant a monthly meter reading fee ($10) that was not disclosed in the Rental Agreement, but then included on each tenants' monthly statement as a 'PGE meter fee.'" (Fact 32).

Page 7 - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 51    Filed 02/24/20

The ruse of hiding the unlawful fee behind the misleading label of "PGE meter fee" is consistent with Mr. Berman's admission that he knew he could only charge tenants an amount equal to or less than the amount PGE billed the Park to read its meters:

> "Q. You mentioned meter-reading fees and that, as I recall, you said that your understanding was you could charge as much or equal or less than what PGE was charging for meter-reading fees?
>
> A. Yes." (Fact 30).

Mr. Berman's scheme – had it not been discovered - was a clever way to disguise the unlawful conduct, and provides further evidence of fraudulent intent. Any Class Member who sought information about the $10 charge on their monthly bill (if actually allowed to see anything at all, see Facts 34-38) would be presented with their billing and payment ledger kept at the Park's business office. There, the $10 charge was labeled as a "PGE Meter Fee," (Facts 5, 9, 11, 32, 34) creating a reasonable, yet false impression that the $10 charge was a pass-through of the amount PGE charged the Park. The debt associated with the meter reading fees was created through false pretenses or by outright falsehood, and is non-dischargeable under 11 U.S.C. §(s) 523(a)(2)(A).

**D. Mr. Berman took affirmative steps intended to prevent discovery of the unlawful overcharges and meter reading fee. This shows fraudulent intent, and also takes this case substantially beyond the facts in *Cohen*.**

> **i. Mr. Berman failed to disclose PGE bills for electrical service and meter reading fees to tenants in violation of ORS 90.315.**

**Page 8** - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 51    Filed 02/24/20

ORS 90.315(4)(a), (b)(D) and (b)(E) required the Park to disclose to Class Members the details of electric charges or related fees. Mr. Berman failed to do so. If he had, Class Members almost certainly would have discovered that PGE was not charging the Park 12 cents per kilowatt hour. Class Members also would have discovered that PGE was not charging the Park a meter reading fee of $1,580 per month ($10 per month for each of the 158 site meters), but was instead charging a combined total meter fee of just $192 per month ($12 x 16 main meters, and no charge for the individual site meters) for the entire combined group of meters within the Park. (Facts 27 - 34).

Mr. Berman's conduct of avoiding required disclosures that would have exposed the scheme is similar to, yet goes significantly beyond the "mute charade" discussed in *In re Felton*, 197 B.R. 881 (N.D. Cal. 1996) and *Germain Lincoln Mercury v. Begun (In re Begun)*, 136 B.R. 490, 494 (Bankr.S.D. Ohio 1992).

Mr. Berman's refusal to disclose statutorily-required information that would have undermined the false representations provided to Class Members shows both an intent to defraud, and an intent to prevent discovery of his misconduct.

   **ii.**  **Mr. Berman and his staff became aggressive and intimidating to Class Members who made actual inquiries about their electric bills.**

Beyond the non-disclosures discussed above, Mr. Berman and the Park also created an atmosphere that frustrated inquiries by Class Members. Two Class Members, Ms. Osborne and Ms. Angulo, provide examples of what

Page 9 - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm   Doc 51   Filed 02/24/20

happened when Class Members asked about their electric bills.

Both were met with hostility and false statements by both Mr. Berman and the Park's office staff. Consequently, both were unable to discover either the unlawful and excessive charges for electrical service or the meter reading fee. (Facts 34-38). This, like the failure to disclose the statutorily required PGE billing information, is additional proof of intent to defraud and to then prevent discovery of the misconduct.

Mr. Berman and the Park he controlled first created a false impression in Class Members regarding their electric bills and meter fees. He then ensured that Class Members would not discover the truth by failing to make the statutorily required disclosures of the underlying PGE bills. Finally, he prevented Class Members who asked about their bills from discovering the truth by responding in a hostile and aggressive manner, and by causing his staff to make false statements about the obligation to provide supporting documents.

> E. **The unlawful approximately $20 monthly overcharge to each Class Member was a material element of the financial planning at the Park. Absent these overcharges, the mortgage on the property was at risk of being foreclosed by the lender.**

Mr. Berman's business model for the Park was grounded in significant part on collecting the approximately $20 per month from each Class Member through the inflated electric bills and the unlawful meter reading fee. Mr. Berman testified that absent those additional funds, there was substantial risk that the bank would foreclose the note on the property. (Fact 14).

Mr. Berman could have transparently increased rent on tenants at the Park

**Page 10** - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 51    Filed 02/24/20

during the class period (April, 2003 onward) to obtain the proper debt coverage ratios. This, however, would likely have cost the Park potential tenants compared rates at the Park to other similar parks in competitive edge when rate-conscious the area. Mr. Berman instead hid the charges by unlawfully inflating electric bills and charging a meter reading fee disguised as a "PGE Meter Fee." (Facts 5, 9, 14, 32, 34).

In sum, Mr. Berman's entire course of conduct shows fraudulent intent. First was the Park's built-in financial dependency each month on the unlawful charges. Without these unlawful billings, the Park was at risk that its mortgage would be put in jeopardy. (Fact 14). Second, Mr. Berman instructed Park staff to tell tenants that PGE charged the Park 12 cents per kilowatt hour. Judge Graves found that representation to be "patently false." (Fact 22). Third was the misleading characterization of the meter fee as "PGE Meter Fee" on Class Members' monthly statement at the Park Office. Mr. Berman knew that he could not charge the Park's tenants more than the Park paid to PGE as a meter fee. (Fact 30). Yet each month he charged tenants almost $1,400 more for the service than PGE charged the Park. (Facts 22, 27 - 34). Styling the overcharges as a "PGE meter fee" shows an intent to deceive.

Fourth, Mr. Berman and the Park failed to disclose or make available to tenants any of the underlying PGE charges as required by ORS 90.315(4). (Facts 32-40). Fifth was Mr. Berman's and the Park staff's hostile and aggressive refusals to answer questions related to their electric bills. (Facts 35-38). These

**Page 11** - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 51    Filed 02/24/20

facts go far beyond those found to be sufficient in *Cohen, supra*.

The judgment entered on the ORS 90.315(4) claims was created through false pretenses or outright falsehoods, and maintained through a concerted and ongoing effort to hide the truth. The entire debt created by the ORS 90.315(4) violations is non-dischargeable under 11 U.S.C. §(s) 523(a)(2)(A).

**2. Debts incurred through willful and malicious conduct that results in damages are non-dischargeable. 11 U.S.C. §523(a)(6).**

11 U.S.C. §523(a)(6) states:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— *** (6) for willful and malicious injury by the debtor to another entity or to the property of another entity….

A two-prong test is used to determine whether a particular debt arose from "willful and malicious injury by the debtor to another" under section 523(a)(6). The creditor must prove that the debtor's conduct in causing the injuries was both willful and malicious. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146-47 (9th Cir. 2002); and see *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 711 (9th Cir. 2008) (recent case reinforcing *Su* and the requirement of courts to apply a separate analysis in each prong of "willful" and "malicious").

Willfulness requires proof that the debtor deliberately or intentionally injured the creditor, and that in doing so, the debtor intended the *consequences* of their act, not just the act itself. *Su*, 290 F.3d at 1143 (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) for support). The debtor must act

**Page 12** - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 51    Filed 02/24/20

with a subjective motive to inflict injury, or with a belief that injury is substantially certain to result from the conduct. *Id.* at 1146.

For conduct to be malicious, the creditor must prove that the debtor: (1) committed a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) was done without just cause or excuse. *Su* at 1146-47. An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will. *In re Aubrey*, 111 B.R. 268, 274 (B.A.P. 9th Cir. 1990).

### A. Willful *** conduct that results in damages

The analysis of this prong is straightforward. Judge Graves determined that Mr. Berman through the Park intended to, and did impose and collect unlawful charges on Class Members relating to electric service and meter fees. (Fact 9, 19). He also found that Mr. Berman intended to raise rent on Class Members in retaliation for filing the initial lawsuit. (Facts 16, 17, 19 - 22). Even after Judge Graves issued his ruling, Mr. Berman continued to charge the retaliatory $20 rent increase. (Facts 20, 21).

The anticipated or intended result of imposing unlawful charges and fees, and from charging an unlawful retaliatory rent increase will, by definition, include financial harm to the payor. Mr. Berman's unlawful conduct was willful and financial injury was certain to result directly from it. The first prong of 11 U.S.C. §523(a)(6) is easily satisfied.

**Page 13** - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 51    Filed 02/24/20

### B. Malicious conduct

*Carillo v. Su (In re Su)*, 290 F.3d 1140 (9th Cir. 2002) also set forth the elements that determine when conduct is "malicious" under 11 U.S.C. §523(a)(6). Each element is satisfied under the facts of this case.

#### i. Committed a wrongful act

Judge Graves found as a matter of law that all defendants (including Mr. Berman) (1) violated ORS 90.315(4) by inflating electric bills; (2) violated ORS 90.315(4) by charging an unlawful meter fee; and (3) violated ORS 90.385 by raising rent to retaliate against Class Members for filing their claims. (Facts 9, 16, 17, 19). This element is satisfied.

#### ii. Done intentionally

Inflated electric bills

Mr. Berman admitted that he knew he could only charge Class Members as much for electricity as he was charged by PGE. Even so, he billed them at a per kilowatt hour charge that was always higher than the amount the Park was charged by PGE. (Facts 22, 32). Judge Graves found that:

> "He [Mr. Berman] directed BBM staff to charge tenants a higher rate per KWH than the utility provider charged BBM. The evidence revealed that Mr. Berman instructed staff to inform tenants they would be charged .12c [12 cents] per KWH., which they were told was the same rate the utility charged BBM. That was patently false." (Fact 22).

Meter Reading Fee

Mr. Berman also knew that he could not legally charge Class Members a meter reading fee that was greater than the amount the Park was charged by

**Page 14** - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 51    Filed 02/24/20

PGE each month. (Fact 30). Regardless, he caused the Park to charge tenants approximately $1,580 per month -- while PGE charged the Park a total of only $192 per month. (Facts 27 - 31). The unlawful charges were no accident – but instead the result of an intentional and knowing decision.

<u>Retaliation</u>

Finally, retaliation is by its nature an intentional act. Mr. Berman had a meeting with Class Members where he explained to them that the Park was raising rent $20 a month to replace the amount of revenue lost each month because of compliance with Judge Graves' rulings. (Fact 16). He admitted the same at trial. (Fact 13).

The retaliation was an intentional act directed at Class Members. This becomes even more obvious when considering Mr. Berman's conduct *after* Judge Graves granted summary judgment in favor of the Class on the retaliation claim. After Judge Graves ruled the $20 charge was retaliatory and unlawful, the Park continued charging Class Members the increased retaliatory rate, and apparently never stopped charging it. (Facts 12, 16, 17, 20, 21).

### iii. Which necessarily causes injury

As discussed above, unlawful overcharges and meter fees, and unlawful rent increases necessarily result in money being taken from Class Members. This loss of money results in financial harm or injury.

**Page 15** - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 51    Filed 02/24/20

### iv. Was done without just cause or excuse.

Inflated electric bills and Meter Reading Fee

Mr. Berman offered various rationales at trial attempting to explain why the Park overcharged for electricity and meter reading fees. Judge Graves rejected each of his proffered justifications, and wrote:

> "The Court does not find William Berman's contrived rationale for BBM's meter reading fee and excess utility charges as explained in his testimony, to be credible. His hearsay testimony, which was uncorroborated in an Offer of Proof is simply not credible." (Fact 22).

There was no just cause or excuse for the unlawful charges.

Retaliation

Mr. Berman admitted that after the Park began complying with the court's summary judgment rulings related to electrical overcharges and meter reading fees in August 2013, he held a meeting with Class Members and others. There, he explained to them that the Park was trying to be "revenue-neutral" by raising the rent $20 a month to make up for the amounts lost through compliance with the court's rulings. He also testified that he raised rent by $20 in order to prevent the bank from calling the mortgage due. (Facts 12 - 14).

Mr. Berman's testimony showed that the Park's business plan included reliance on the approximately $20 a month that it unlawfully obtained from each Class Member. Loss of those funds does not constitute "just cause or excuse" for then unlawfully raising rent.

**Page 16** - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 51    Filed 02/24/20

The debt Mr. Berman seeks to discharge consists entirely of "debt *** for willful and malicious injury by the debtor to another entity or to the property of another entity…." The entire amount is non-dischargeable under 11 U.S.C. §523(a)(6).

3. **The full amount of the Class Members' judgment is non-dischargeable, including penalties, interest, and attorney fees.**

In *Cohen*, the Supreme Court held that under §523(a)(2)(A):

> any debt . . . for money, property, services, or . . . credit, to the extent obtained by fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor." *Cohen v. De La Cruz*, 523 U.S. 213, 223 (1998) (Internal quotations omitted).

Discussing §523(a)(6), the court in *In re Britton*, 950 F.2d 602, 606 (9th Cir. 1991) noted:

> We have held that "both compensatory and punitive damages are subject to findings of nondischargeability pursuant to section 523(a)(6). . . ." *Moraes v. Adams (In re Adams),* 761 F.2d 1422, 1423, 1428 (9th Cir. 1985). In *Adams,* the court rejected the debtor's argument that only the punitive portion was nondischargeable under this section. It noted, "`The exception is measured by the nature of the act, *i.e.,* whether it was one which caused willful and malicious injuries. *All liabilities resulting therefrom are nondischargeable.*'"
>
> *Id.* (quoting *Coen v. Zick,* 458 F.2d 326, 329-30 (9th Cir. 1972)).

Statutory damages, attorney fees, and costs associated with an underlying debt found non-dischargeable under §523(a)(6) are also non-dischargeable. The court in *In re Suarez*, 400 B.R. 732, 738-39 (B.A.P. 9th Cir. 2009) wrote:

> Established case law holds that a debtor's obligation for attorneys fees and costs is excepted from discharge under section 523(a)(6) as a "debt for" debtor's willful and malicious injury when awarded by the state court "with respect to" or "by reason of" the same underlying conduct that precluded discharge of the underlying compensatory damages award. *Nolan v. Smith (In re Smith)*, 321 B.R. 542, 548 (Bankr. D. Colo.

Page 17 - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 51    Filed 02/24/20

2005) (applying the rationale of *Cohen v. de la Cruz*, 523 U.S. 213 (1998) for nondischargeability of attendant attorneys fees and costs under section 523(a)(2)(A) to section 523(a)(6); *Star's Edge, Inc. v. Braun (In re Braun)*, 327 B.R. 447, 452 (Bankr. N.D. Cal. 2005) (applying *Cohen* to reach same result regarding statutory damages for copyright infringement); *Mills v. Ellerbee (In re Ellerbee),* 177 B.R. 731, 744 (Bankr. N.D. Ga. 1995) (attorneys fee obligation imposed on debtor by same state court judgment that gave rise to nondischargeable judgment debt is likewise excepted from discharge as an additional kind of damages flowing from debtor's underlying willful and malicious tort), *aff'd*, 78 F.3d 600 (11th Cir. 1996); *Solomon v. Jarrett (In re Jarrett)*, 303 B.R. 816, 820 (Bankr. E.D. Ark. 2003) (same); *Biggers v. Wilson (In re Wilson)*, 216 B.R. 258, 269 (Bankr. Wis. 1997) (same); *Au Pharm., Inc. v. Whitner (In re Whitner),* 179 B.R. 699, 703 (Bankr. E.D. Okla. 1995) (same); and *Littlefield v. McGuffey (In re McGuffey),* 145 B.R. 582, 597 (Bankr. N.D. Ill. 1992) (same).

The entire amount of each of the judgments entered in this case, plus interest are non-dischargeable.

Dated: January 9, 2020.

/s/ Rick Klingbeil
Rick Klingbeil, OSB # 933326
Of Attorneys for Ad Hoc Group

Page 18 - MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)
Case 19-06026-pcm    Doc 51    Filed 02/24/20

CERTIFICATE OF SERVICE

    I, Keith Karnes, certify that I served the forgoing document via ECF which will in turn serve:

NICHOLAS J HENDERSON    nhenderson@portlaw.com, tsexton@portlaw.com;mperry@portlaw.com;hendersonnr86571@notify.bestcase.com

And I further served the following via first class mail, postage prepaid, addressed to:

William John Berman
c/o Nicholas Henderson
117 SW Taylor St., #300
Portland, OR 97204

    DATED: February 24, 2020

    /s/Keith D. Karnes
    Keith D. Karnes, OSB No. 033521
    Rank & Karnes Law, P.C.