**KEITH D. KARNES**, OSB No. 033521
keith@rankkarneslaw.com
Rank & Karnes Law, P.C.
2701 12th St. SE
Salem, OR 97302
Tel: 503-385-8888
Fax: (503) 385-8899

**KEVIN J. RANK**, OSB No. 914034
kevin@rankkarneslaw.com
Rank & Karnes Law, P.C.
2701 12th St. SE
Salem OR 97302
Tel: 503-385-8888
Fax: 503-385-8899

**BRADY MERTZ,** OSB No. 970814
brady@bradymertz.com
Brady Mertz PC
345 Lincoln St SE
Salem OR 97302
Tel: 503-385-0121
Fax: 503-375-2218

**RICK KLINGBEIL,** OSB No. 933326
rick@klingbeil-law.com
Rick Klingbeil PC
1826 NE Broadway
Portland OR 97232
Tel: 503-473-8565

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| IN RE: | Case No. 19–60230-pcm11 |
|---|---|
| WILLIAM JOHN BERMAN | Adv. Pro. No. 19-06026-pcm |

Page 1 - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

|  |  |
|---|---|
| Debtor | CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6) |
| LOREN HATHAWAY, on behalf of himself and all others similarly situated; GENNISE HATHAWAY, on behalf of herself and all others similarly situated; and HEATHER NOBLE, on behalf of herself and all others similarly situated<br><br>                  Plaintiffs<br>    v.<br><br>WILLIAM JOHN BERMAN,<br><br>                  Defendant. |  |

## I. CONCISE STATEMENT OF MATERIAL FACTS

1.   At all material times: B. & J. Properties ("B. & J.") and Better Business Management ("BBM") were closely-held Oregon corporations owned and operated by William J. Berman ("Mr. Berman") and his spouse Debra Berman. Mr. and Ms. Berman were the sole owners and officers of both companies. Mr. Berman was the registered agent for both companies.  (Rick Klingbeil declaration, ¶ 2, Exhibit 1; *Id.,* ¶ 3, Ex. 2, *Hathaway et al. v. B. & J.*

Page 2 - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 52    Filed 02/24/20

*Property Investments, Inc., et al*, MCCC 13C14321, Dkt. 10/16/18,[1] *Corrected Opinion Letter*, p. 3).

2. BBM managed and operated a mobile home park ("Salem RV Park" or "Park") located in Salem, Marion County, Oregon. (*Id.*).

3. B. & J. owned the real property upon which the Salem RV Park was located, and leased the property and facilities to BBM. (*Id.*; *In Re: B. & J. Property Investments, Inc.*, 19-60138-pcm11, Dkt. 89, 158[2], *Schedule A/B*).

4. On April 12, 2013 Plaintiffs / Class Representatives Loren Hathaway, Gennise Hathaway, and (later in the case) Heather Noble, acting on behalf of themselves and the Class of all others similarly situated ("The Class" or "Class Members") filed claims against B. & J. and BBM. Their claims included allegations under ORS §90.315(2), (4)(a) and (4)(b) for intentional violations of Oregon's landlord tenant law relating to utility charges. *Hathaway et al. v. B. & J. Property Investments, et al.*, Marion County Circuit Court, case number Case No. 13C14321. (Klingbeil dec., ¶ 3, Ex. 3, *Hathaway* Case, Dkt. 4/12/2013, *Complaint*).

---

[1] Documents filed in preceding *Hathaway et al. v. B. & J. Property Investments, Inc., et al*, MCCC 13C14321 case (the civil claim that led to Mr. Berman's debts to the Class Members now filing this Motion) will be cited in the remainder of this brief as the "*Hathaway* Case." Each cite will include the date the document was entered into the state court docket, and a short description of the document where necessary.

[2] Documents filed in this case, *In re: B. & J. Property Investments, Inc.,* 19-60138-pcm11, will be cited as "*In re: B&J*" and will include the docket and page number where relevant.

Page 3 - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 52    Filed 02/24/20

5. The Class Members' claims included allegations that each month B. & J. and BBM inflated billings for electrical service provided to Class Members. It also alleged they charged Class Members an unlawful monthly fee that they had misleadingly named "PGE meter fee." (*Id.*)

6. At the time the Hathaway Case was filed, Mr. Berman had over 15 years of experience managing the Park. That was his primary occupation for the times relevant to this lawsuit. According to Mr. Berman, RV Park ownership and management has been the thing he does "on a daily basis," for "the last couple of decades." (*Id.*, ¶ 4, Ex. 4 - Berman trial transcript, p. 991).

7. At all times relevant to the claims and allegations in the *Hathaway* Case (April, 2003 forward) BBM, B. & J., and Mr. Berman were represented by counsel, and have had yearly corporate meetings with both their attorneys and a CPA present. Their attorneys created corporate minutes from each of those meetings. (*Id.,* ¶ 4, Ex. 5 - Berman trial transcript, pp. 1650-51, 1658).

8. At all times relevant to the claims and allegations in the Hathaway Case (April, 2003 forward) BBM, B. & J., and Mr. Berman had attorneys on retainer and could consult with them regarding any statutes or laws related to the operation of BBM, B. & J., and the Park, including rules relating to electrical billings, meter reading fees, and Park operations and management. Even so, he never did. (*Id.*, ¶ 4, Ex. 6, Berman trial transcript, pp. 994, 1702-04).

9. On January 15, 2015 Judge Dennis Graves of the Marion County Circuit Court granted partial summary judgment on liability against defendant BBM

Page 4 - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 52    Filed 02/24/20

on Plaintiffs' ORS §90.315(4) claims. The court held that BBM inflated billings for electrical service and that charging the $10 "PGE meter fee" violated the statute. (*Id.*, ¶ 3, Ex. 7, *Hathaway* Case, Dkt. 1/15/15, *Order*).

10. The determination of B& J's liability for the ORS §90.315(4) violations was deferred pending a bench trial at a later date to determine whether to disregard the BBM corporate entity and hold B. & J. directly liable for BBM's misconduct.

11. Beginning July 29, 2013, after the Class Members prevailed on their Motions for Partial Summary Judgement on their ORS §90.315(4) claims, BBM stopped charging the unlawful overcharges for electrical service, and discontinued the unlawful $10 "PGE Meter" fee. (*Id.,* ¶ 3, Ex. 8, *Hathaway* Case, Dkt. 7/8/2015, pp. 3-4, Opinion Letter).

12. After the Park stopped the unlawful charges, it collected approximately $20 less per tenant for electrical service each month. (*Id.*).

13. Concurrent with making these changes, BBM retaliated against each Class Member, raising their monthly rent by $20. (*Id.*) Mr. Berman admitted this was done to recoup the amount the Park had been unlawfully receiving from unlawful electrical charges in violation of ORS §90.315(4). He testified at trial:

> "Q. Now, you had a meeting after that change [compliance with the court's rulings on the electrical overcharges and meter reading fee] occurred or around the time the change occurred with the tenants at Salem RV Park?
>
> A. I did.

Page 5 - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 52    Filed 02/24/20

> Q. And did you explain to them at the meeting the idea is you were trying to be revenue-neutral by raising the rent $20 a month?
>
> A. I did.
>
> Q. Okay. And by that, you mean we're giving a $10 -- we're getting $10 less because we're not charging the meter-reading fee and we're bringing in less for the electricity charges? Right?
>
> A. Yes.
>
> Q. Okay. So $20 about evened that out?
>
> A. Yes.
>
> Q. Okay. Now, the people that were there back in April of 2013 and that are still there, they're still being charged that additional $20 rent?
>
> A. Yes. (*Id.*, ¶ 4, Ex. 9, Berman trial transcript, p. 1017).

14. Mr. Berman's business model for the Park had relied in significant part on the approximately $20 per month taken from each Class Member through the unlawfully inflated electric bills and the unlawful meter reading fee. Before the Class filed its lawsuit, instead of increasing rent on tenants at the Park during the relevant class period (April, 2003 onward) to obtain the proper debt coverage ratios, Mr. Berman decided to hide the charges by inflating electric bills and charging a meter reading fee disguised as a "PGE Meter Fee." Mr. Berman testified that absent those additional unlawful charges, he was at risk of the bank calling the note on the Park property. Asked why the Park raised the rent by $20 after the court granted summary judgment on the ORS §90.315(4) claims, he testified:

Page 6 - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 52    Filed 02/24/20

> A. *** [I]t had to do with the pressure from my mortgage company that we were borderline on debt coverage ratio as a covenant of the loan and if our revenue stream diminished, because you have to remember we hadn't had a rate increase since 2008, that then I would be in vi – I was concerned that I would -- the bank would call my loan, …. …. (*Id.*, ¶ 4, Ex. 10, Berman trial transcript, p. 1018).

15. On September 19, 2013 Plaintiffs amended their *Complaint* and alleged retaliation in violation of ORS §90.385 based on the $20 monthly rent increase. (*Id.*, ¶ 3, Ex. 11, pp. 14-15, *Hathaway* Case, Dkt. 9/19/13, Complaint – Third Amended).

16. On July 8, 2015 Judge Graves granted partial summary judgment for liability on the Class retaliation claims. He wrote:

> "In this case, it is clear that the Defendants took action by raising the rent as a result of the lawsuit. The owner of the park, Mr. Berman, held three meetings to announce new policies and explain to tenants that the result of the change in policies was to be "revenue neutral." In essence, this means that the park ceased their undisclosed practice of overcharging for electricity and separately charging for "meter reading." It is obvious that these changes in "the policy" were made in response to this current lawsuit. Once the Defendants were no longer able to illegally overcharge tenants for electricity and meter reading fees, they chose to instead increase the rent. It is clear that this action was done in response and because of tenants' filing this lawsuit. As a result, this court finds that Defendants did in fact violate ORS 90.385 by retaliating when they raised rent by $20."

(*Id.*, ¶ 3, Ex. 12, *Hathaway* Case, Dkt. 7/8/2015, Opinion - Letter).

17. On April 19, 2016 Judge Graves entered an Order granting the Class Members' Motion for Partial Summary Judgment for damages on their retaliation claims. (*Id.*, ¶ 3, Ex. 13, *Hathaway* Case, Dkt. 4/4/2016, Order).

18. On May 5, 2016 the Class amended its *Complaint* to add Mr.

**Page 7** - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 52    Filed 02/24/20

Berman as a defendant, alleging the same claims against him as were previously alleged against B. & J. and BBM. In allowing the amendment, Judge Graves found:

> "Mr. Berman was involved in making the decisions that caused BBM to implement the policies at issue. Therefore, the Court allows plaintiffs' Motion to Amend the Complaint to add Mr. Berman as a party." (*Id.*, ¶ 3, Ex. 14, Dkt. 2/25/2016, Opinion - Letter).

19. On November 29, 2016 Judge Graves granted the Class Members' Motion for Partial Summary Judgment on damages for their ORS §90.315(4) claims, and for liability on their ORS 90.385 retaliation claim.[3] (*Id.,* ¶ 3, Ex. 12, *Hathaway* Case, Dkt. 07/09/2015, Opinion letter).

20. Although Judge Graves ruled that the $20 rent increase was retaliatory and violated ORS §90.385, Mr. Berman caused the Park to continue charging the unlawful $20 increase to Class Members who remained there. On February 25, 2016, Judge Graves wrote:

> "On the February 8, 2016 phone conference with counsel, counsel for defendants indicated that defendants have continued to charge the same retaliatory rates, despite the July 9, 2015 ruling that the rates were in violation of ORS 90.385." (*Id.,* ¶ 3, Ex. 14, *Hathaway* Case, Dkt. 2/25/16 - Opinion Letter).

21. The unlawful $20 charge continued until the date the bankruptcy was filed by B. & J., and on information and belief still continues for Class

---

[3] The entry of the Orders first on damages, then on liability for the retaliation claim (paragraphs 17 and 19) are out of date sequence. This was because of some delays in preparing and obtaining signatures on the two separate Orders. The rulings occurred in the sequence of (1) liability and (2) damages.

**Page 8** - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 52    Filed 02/24/20

Members who remain as tenants at the Park. (Klingbeil dec., ¶ 5).

22. After a bench trial in December, 2017, Judge Graves found *by clear and convincing evidence* that the BBM corporate entity should be disregarded, and that Mr. Berman and B. & J. should be held jointly and severally liable for BBM's unlawful acts relating to the Class:

> "I conclude that the shareholders of B & J Property Investments, Inc. and William Berman, individually, did exercise complete control of BBM."
>
> *****
>
> "After Mr. Berman became President of B & J, he and his wife incorporated BBM solely according to his testimony, to provide as a "corporate shield" for the assets of B & J. In addition, William Berman was the registered agent of both corporations.
>
> *****
>
> "I conclude that the shareholders of B & J Property Investments, Inc., and William Berman, individually, did engage in wrongful conduct with respect to BBM."
>
> *****
>
> "William and Debra Berman were the sole shareholders of B & J and BBM during all relevant times of Plaintiffs' claims. As President of both corporations and a shareholder, Mr. Berman caused BBM to violate ORS 90.315(4) through his own contrived plan to "avoid losing money on electrical charges" that BBM owned to its utility provider. He directed BBM staff to charge tenants a higher rate per KWH than the utility provider charged BBM. *The evidence revealed that Mr. Berman instructed staff to inform tenants they would be charged .12c [12 cents] per KWH., which they were told was the same rate the utility charged BBM. That was patently false.* He also, without consistent disclosure in class members' Rental Agreements, charged each tenant $10 monthly as a meter reading fee ($10 x 157 tenant spaces = $1,570.00 monthly). Also, contrary to this court's Order dated January 15, 2015, BBM retaliated under ORS 90.385(1)

Page 9 - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 52    Filed 02/24/20

against the Plaintiff class by ceasing to charge an elevated KWH rate and the monthly meter reading fee and; instead, simply raised the monthly rental amount an approximately equal amount. The shareholders of BBM and Mr. Berman, as President engaged in BBM's misconduct by their actions described herein. *The Court does not find William Berman's contrived rationale for BBM's meter reading fee and excess utility charges as explained in his testimony, to be credible. His hearsay testimony, which was uncorroborated in an Offer of Proof is simply not credible."*

*****

"I conclude that the shareholders of B & J Properties Investments, Inc. and William Berman, individually, caused the complained of injury by the BBM Corporation ......" (Italics added.)

(*Id.*, ¶ 3, Ex. 2, *Hathaway* Case, Dkt. 4/27/17 - *Corrected Opinion Letter*).

23. On October 16, 2018 Judge Graves granted the Class's Partial Summary Judgment against all defendants' statute of limitations defense. He found that the Class did not know, nor were there facts showing Class Members had reason to know that the "meter reading fees" were unlawful:

> "the record does not contain any genuine issue of material facts concerning whether Plaintiffs knew or should have known of the critical facts that the meter reading fees were a violation of ORS 90.315(4)."

(*Id.*, ¶ 3, Ex. 15, *Hathaway* Case, Dkt. 10/16/18 - *Order on Plaintiffs'/Class Motion for Summary Judgment on Defendants' Statute of Limitations Defense….*).

24. Mr. Berman and the other defendants did not contend that Class Members knew or should have known that the inflated electrical charges violated Oregon law. (*Id.*).

25. On October 30, 2018 Judge Graves entered a judgment in favor of

Page 10 - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 52    Filed 02/24/20

the Class and against the Mr. Berman and other defendants in the amount $3,900,501.00 for claims under ORS §90.315(4) and for $964,450.00 for retaliation claims under ORS §90.385. (*Id.,* ¶ 3, Ex. 17, *Hathaway* Case, Dkt. 10/31/18, *Digitized Judgment Document*).

26. On January 2, 2020, the court entered an Order awarding Class Members attorney fees and costs of $925,161.20. (*Id.,* ¶ 3, Ex. 16, *Supplemental Judgment*).

27. At the Park there were 16 main meters that branched off to 158 individual site meters. PGE charged the Park a $12 fee to read each of the 16 main meters, for a total of $192 per month total meter reading fees for the entire park. PGE did not read any of the 158 site meters, and consequently did not charge any meter reading fee associated with the 158 meters. (*Id.,* ¶ 4, Ex. 19, Berman trial transcript, pp. 1534-38, 1540, 1543, 1682-84.)

28. The $192 charge is the total amount arguably recoverable under the guidance of ORS 90.315(a), which would have allowed a charge of, at most, $1.22 to each Class Member ($192 / 158 spaces = $1.22) *if, and only if* the appropriate disclosures had been made to Class Members under ORS 90.315(b). The meter reading fees, however, were never disclosed to Class Members as required by statute. (*Id.,* ¶ 3, Ex. 18, *Hathaway* Case, Dkt. 2/12/19, *Opinion – Letter re: attorney fees*).

29. Mr. Berman admitted that the total meter fee PGE charged the Park was far less than the amount he charged Park tenants:

Page 11 - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 52    Filed 02/24/20

Q. Was PGE charging you a meter-reading fee to read your meters?

A. Yeah, it's a term of basic charge, meter fee, it's synonymous words the way I'm using them.

Q. About how much was your meter-reading fee from PGE?

A. $12.

Q. But you were charging, and that was per meter or per --

A. Per meter.

*****

Q. So you were charging tenants $10 at a hundred to 150 -- 150 to 158 spaces every month?

A. Yes.

Q. And that's $1,580 if all 158 meters fees are charged.

A. Yes.

Q. Per month.

A. Yes.

MR. KLINGBEIL: All right.

THE COURT: I'm sorry, would you, I'm trying to catch up with my writing, PGE was charging a $12 reading fee -- meter-reading fee for all of the 16 main meters, is that correct?

THE WITNESS: Yes, Your Honor.

THE COURT: Total of 12.

THE WITNESS: Total of 16. Oh, I'm sorry, total of $12 times 16, yes.

THE COURT: Times 16 --

Page 12 - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 52    Filed 02/24/20

THE WITNESS: Times -- times --

THE COURT: -- so one, one $12 fee for each of the 16 main meters?

THE WITNESS: Yes, Your Honor.

BY MR. KLINGBEIL: (Continuing)

Q. So if my math is right, that's about 120 plus seven two, about less than $200 meter-reading fee per month?

A. Okay.

Q. Does that --

A. It --

Q. -- sound about right --

A. It sounds about right --

Q. Okay, but then you were turning around and charging 1,500 to 1,580 a month.

A. Yes. (*Id.*, ¶ 4, Ex. 19, Berman trial transcript, pp. 1682-84.)

30. Mr. Berman also admitted at trial that he knew he could only charge tenants an amount equal to or less than the amount PGE billed the Park for meter reading fees:

Q. You mentioned meter-reading fees and that, as I recall, you said that your understanding was you could charge as much or equal or less than what PGE was charging for meter-reading fees?

A. Yes. (*Id.*, p. 1682).

31. Even so, while PGE charged the Park a total of $192 each month for meter reading fees, Mr. Berman caused the Park to charge the tenants a total of

Page 13 - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 52    Filed 02/24/20

approximately $1,580 each month for meter reading fees. (*Id.,* pp. 1682-84).

32. In his ruling on attorney fees, Judge Graves held:

"Class members were awarded $4,864,541.00 in damages as a result of the court's findings and conclusions, that the landlord violated ORS 90.315 by charging tenants a higher kilowatt hour rate for electricity than was charged by the electric utility company. *The landlord also charged each tenant a monthly meter reading fee ($10) that was not disclosed in the Rental Agreement, but then included on each tenants' monthly statement as a 'PGE meter fee.'"*

(*Id.,* ¶ 3, Ex. 18, *Hathaway* Case, Dkt. 2/12/19, *Opinion – Letter re: attorney fees*). (Italics added).

33. The portion of ORS 90.315(4) relating to meter reading fees states in part:

"(a) ***** *if a written rental agreement so provides*, a landlord may require a tenant to pay to the landlord a utility or service charge or a public service charge *that has been billed by a utility or service provider to the landlord for utility or service* provided directly, or for a public service provided indirectly, to the tenant's dwelling unit or to a common area available to the tenant as part of the tenancy."

*****

(b)(A) *If a rental agreement provides that a landlord may require a tenant to pay* a utility or *service charge* *****

(b)(C) The landlord must:

(i) Include in the bill to the tenant *a copy of the provider's [PGE's] bill*; or

(ii) If the provider's bill is not included, *state that the tenant may inspect the provider's bill at a reasonable time and place* and that the tenant may obtain a copy of the provider's bill by making a request to the landlord during the inspection and upon payment to the landlord for the reasonable cost of making copies.

Page 14 - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 52    Filed 02/24/20

*****

> (c) Except as provided in this paragraph [referencing irrelevant portions dealing with cable tv or internet service], a *** *service charge may only include the cost of the *** service as billed to the landlord by the provider.*" ORS 90.315(4)

34. None of the Class Members' rental agreements provided for or disclosed a meter reading fee. The only disclosure to Class Members was through a billing and payment ledger maintained in the Park's business office that stated a charge for a "$10 PGE Meter Fee." (*Id. ¶ 3, Ex. 18, Hathaway Case, Dkt. 2/12/19, Opinion – Letter re: attorney fees;* ¶ 3, Ex. 2, *Hathaway* Case, Dkt. 4/17/18, *Corrected Opinion Letter*).

35. Class Members were never told they could inspect the PGE bill, nor was it ever provided to them. The policy at the Park was just the opposite – Mr. Berman and Park employees expressed overt hostility toward Class Members who sought to review their electric and utility bills at the Park. In her signed and sworn declaration, Class Member Debra Osborne related Mr. Berman's response to her inquiry about her fluctuating electrical bill. The interaction sheds light on the environment created at the Park.

Ms. Osborne testified:

> "2. While a tenant at the Salem RV Park, I had asked on a few occasions why the electric bill fluctuated so much, but was never given a reason other than it was based on what my meter read. On the date I paid my final electric bill (10/12/2008), I spoke directly to the owner, Bill Berman, asking why my electric bill jumped from the $70/80 dollar per month range, to $109.

Page 15 - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 52    Filed 02/24/20

> "3. I will never forget his response. He told me, "It doesn't matter. You are being evicted. I've already shredded your file. You should feel grateful you are getting out of here without having to pay more because you actually owe me a lot of money."
>
> "4. I never spoke to anyone from Salem RV Park after 10/27/2008.
>
> "5. Mr. Berman's response to my inquiry was hostile, and it seemed to me that it was intended to intimidate me into not asking any additional questions about my electric bills.
>
> "6. At no time before I learned of this lawsuit was I aware that Salem RV Park was applying a markup to the cost of my electricity.
>
> "7. At no time before I learned of this lawsuit was I aware that Salem RV Park was charging me a $10 meter reading fee and that the charge was a violation of Oregon law." (*Id.*, ¶ 6, Ex. 20, *Debra Osborne Declaration*).

36. Besides violating ORS 90.315's disclosure requirements, Mr. Berman also intimidated Ms. Osborne at the time of her inquiry by falsely claiming that she owned money to the Park. At the time Mr. Berman told Ms. Osborne "you owe me a lot of money" the Park actually *owed her* approximately $90. (Klingbeil dec., ¶ 7).

37. Class Member Shirley Angulo lived at SRVP from August 2008 to July 2009. She attempted to ask the Park's office managers why her electric bill fluctuated. In her sworn and signed claim form, she explained:

> "While a tenant at Salem RV Park I asked the office manager at the Park office to show me a copy of my electric bill. He refused, stating "I do not have to show you a bill." He treated me with hostility and aggression when I made the request.
>
> "When I asked about why there were discrepancies in the bill compared to the bill from the electric company, he told me that every tenant's electrical bill was gathered into one bill, and that he (the

Page 16 - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 52    Filed 02/24/20

manager) then decided how much each tenant paid.

"At no time before I learned of this lawsuit was I aware that Salem RV Park was applying a markup to the cost of my electricity.

"At no time before I learned of this lawsuit was I aware that Salem RV Park was charging me a $10 meter reading fee that was a violation of Oregon law." (*Id.*, ¶ 8, Ex. 21, *Angulo claim form*).

38. The Park staff were apparently instructed by Mr. Berman or his agents that they "do not have to show" tenants the information required by ORS 90.315. Again, similar to Ms. Osborne's experience with Mr. Berman, the staff's refusal to provide the required documentation was combined with hostility and aggression, sending the message that questions about electric service were not welcome, and further shielding the unlawful overcharges and meter fee from discovery.

39. The portion of ORS 90.315(4) relating to the electrical charges states in relevant part:

> (c) Except as provided in this paragraph [referencing irrelevant portions dealing with cable tv or internet service], a *utility \*\*\* charge may only include the cost of the utility \*\*\* as billed to the landlord by the provider."*

40. The cost of electricity billed by PGE to the Park varied from approximately 9 cents per KWH to a figure that was always less than 12 cents per KWH. Even so, the Park charged Class Members 12 cents per KWH, a figure greater than "the cost of the utility *** as billed to" the Park by PGE. (*Id.,* ¶ 3, Ex.

/ / / / /

/ / / / /

Page 17 - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 52    Filed 02/24/20

2, *Hathaway* Case, Dkt. 4/17/18, *Corrected Opinion Letter*, p. 4).

Dated January 9, 2020.

/s/ Rick Klingbeil
Rick Klingbeil OSB # 933326
Of Attorneys for Ad Hoc Group

**Page 18** - CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. 523(a)(6)

Case 19-06026-pcm    Doc 52    Filed 02/24/20

CERTIFICATE OF SERVICE

      I, Keith Karnes, certify that I served the forgoing document via ECF which will in turn serve:

NICHOLAS J HENDERSON    nhenderson@portlaw.com, tsexton@portlaw.com;mperry@portlaw.com;hendersonnr86571@notify.bestcase.com

And I further served the following via first class mail, postage prepaid, addressed to:

William John Berman
c/o Nicholas Henderson
117 SW Taylor St., #300
Portland, OR 97204

      DATED: February 24, 2020

                        /s/Keith D. Karnes
                        Keith D. Karnes, OSB No. 033521
                        Rank & Karnes Law, P.C.