

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON
1050 SW SIXTH AVENUE, #700
PORTLAND, OREGON  97204
(503) 326-1536

**PETER C. McKITTRICK**
BANKRUPTCY JUDGE

M. CAROLINE CANTRELL
LAW CLERK

DIANE K. BRIDGE
LAW CLERK

TONIA McCOMBS
LAW CLERK

May 6, 2020

**TRANSMITTED VIA ECF**

Rick Klingbeil
Rick Klingbeil PC
1826 NE Broadway
Portland, OR  97232

Keith D. Karnes
Rank & Karnes Law, P.C.
2701 12th St. SE
Salem, OR  97302

Nicholas J. Henderson
Motschenbacher & Blattner LLP
117 SW Taylor St., Ste. 300
Portland, OR  97204

Re:  <u>Hathaway v. Berman</u>, Adv. No. 19-6026-pcm
Motion for Summary Judgment

Dear Counsel:

Plaintiffs' motion for summary judgment came before the court for hearing on May 6, 2020.  The court has considered the motion and response, the evidence provided, and the arguments of the parties.  For the reasons that follow, the motion will be denied.

Plaintiffs, purportedly on behalf of themselves and others similarly situated, filed this complaint to determine the dischargeability of a prepetition state court class action judgment, pursuant to § 523(a)(2)(A) and § 523(a)(6), as well as to deny debtor a discharge pursuant to § 727.  Plaintiffs move for summary judgment on the dischargeability claims only.

## PRELIMINARY MATTERS

Before discussing the merits of the motion, there are three preliminary matters that need to be addressed.

First, Local Bankruptcy Rule 7007-1(a)(1) requires that, in the first paragraph of a motion, the filer must certify that the moving party has conferred with the opposing party and attempted to resolve the dispute. The court may deny any motion that does not comply with this pre-filing certification requirement. LBR 7007-1(a)(2).[1]

The first paragraphs of plaintiffs' motion for summary judgment and memorandum in support of the motion do not include any certification of an attempt to confer. Counsel for debtor submitted a declaration that he was never contacted in an attempt to meet and confer. Therefore, plaintiffs violated Local Bankruptcy Rule 7007-1(a)(1) and the motion could be denied on that basis alone.

Second, Local Bankruptcy Rule 7056-1(c)(4) provides that the concise statement of facts that is required to be filed in support of a motion for summary judgment is limited to five pages, unless the court has given prior authorization. The Concise Statement of Facts filed by plaintiffs is 18 pages long. Plaintiffs never requested, and the court never authorized, an over-length concise statement. The court could strike the concise statement for the violation, or limit its consideration to the first five pages that were filed.

Third, the motion requests summary judgment on behalf of a class of plaintiffs. The complaint, filed on May 6, 2019, is brought by three named plaintiffs on behalf of themselves and others similarly situated. Through most of the course of this adversary proceeding, including the filing of a Third Amended Complaint in January 2020, plaintiffs failed to request class certification for this adversary proceeding. They filed this motion for summary judgment on February 24, 2020, seeking summary judgment on behalf of the class. They did not file a motion to certify the class until a month later, on March 25, 2020. The court has not ruled on that motion. Thus, any summary judgment entered on plaintiffs' behalf would apply only to the named plaintiffs.

Because the plaintiffs filed their motion before any class was certified, the court could deny the motion for summary judgment on that basis alone.

Although each of these rule violations and other deficiencies would support denial of the motion for summary judgment, the court has nonetheless considered the motion. Because the motion will be denied on the merits, I will not deny it based on the procedural defects outlined above.

Counsel for plaintiffs are admonished, however, that the court in the future is unlikely to ignore such blatant violations of its rules. Further violations may result in summary denial of whatever relief is sought and the imposition of sanctions.

---

[1] Debtor cites the Local Rule of the District Court that requires a meet and confer certification, LR 7-1. He also relies on LR 7-1(2) regarding dispositive motions. Except as provided in the Local Bankruptcy Court Rules, the Local District Court Rules do not apply in this court. Our LBR 7007-1 does not contain any rule particular to dispositive motions. Counsel for debtor is cautioned to consult the Local Bankruptcy Court Rules, not the Local District Court Rules, unless required by the LBRs.

MERITS OF THE MOTION

There is no dispute about the underlying action giving rise to the debts to these plaintiffs.[2]

Debtor and his wife were sole owners and officers of B & J Properties (B & J) and Better Business Management (BBM).  BBM managed and operated a mobile home park (the park) that was on land owned by B & J.  Prepetition, plaintiffs filed a class action against BBM and B & J on behalf of themselves and other tenants of the park alleging violations of Oregon's landlord tenant law, ORS 90.315(4), relating to utility charges.  The state court found that BBM violated ORS 90.315(4) in two ways: by charging tenants for electricity at a rate that was more per KWH than the utility was charging to BBM, and by charging a meter reading fee to each tenant.  Thereafter, BBM stopped the offending conduct and raised the tenants' rent by $20 per month.  The state court found that this increased rent violated ORS 90.385, which prohibits retaliation against tenants for making a complaint related to the tenancy.  It awarded judgment in favor of the class and against debtor and the other defendants of $3,900,000 for violations of ORS 90.315(4); $964,450 for violations of ORS 90.385; and attorney fees and costs of $925,000.

After debtor filed bankruptcy, plaintiffs, purportedly for themselves individually and on behalf of the other state court class members, filed this action to determine the dischargeability of the state court judgment under § 523(a)(2)(A) and § 523(a)(6).  Claim #1 alleges that the judgment for damages arising from the electrical service charges is nondischargeable under § 523(a)(2)(A) because the debt arose from false pretenses.  Claim #2 alleges that the judgment for damages arising out of the meter reading fee is nondischargeable under § 523(a)(2)(A) because those charges are a result of false pretenses.  Claim #3 alleges that debtor willfully and maliciously violated ORS 90.315(4) by charging the electrical service charges, making the debt nondischargeable under § 523(a)(6).  Claim #4 alleges that debtor willfully and maliciously violated ORS 90.315(4) by charging the meter reading fee, making the debt nondischargeable under § 523(a)(6).  Finally, in Claim #5, plaintiffs allege that debtor willfully and maliciously violated ORS 90.385 by retaliating against them for prevailing on their other claims, making the debt nondischargeable under § 523(a)(6).

Plaintiffs move for summary judgment on all five of these claims.  In support of their motion, they rely on the state court findings and judgment, as well as on some testimony from the state court action.[3]

---

[2]     The undisputed facts are taken from facts stated in plaintiff's Concise Statement of Facts and admitted by debtor.

[3]     The Declaration of Rick Klingbeil says that the portions of transcripts attached to his declaration are "true and correct copies of excerpts taken from the deposition of William Berman" in the state court action.  ¶ 4.  That representation is not correct, as all of the excerpts other than Exh. 10 include questions or rulings by the court.  E.g., Exh. 4, Exh. 5, Exh. 6, Exh. 9, Exh. 19.  These exhibits are not what they are represented to be.  They have little use in support of this motion without accurate information about when the testimony was taken or under what circumstances, nor the context of the testimony.

1.     Claims #1 and #2: § 523(a)(2)(A)

Plaintiffs seek summary judgment on their § 523(a)(2)(A) claims, which are based on debtor's violations of ORS 90.315(4) by charging more per kilowatt hour for electricity than the park was being charged by the utility, and for charging a meter reading fee that exceeded the amount the utility was charging the park.

A debt for money obtained by "false pretenses, a false representation, or actual fraud" is nondischargeable. § 523(a)(2)(A). A creditor seeking to prove that a debt is nondischargeable under section 523(a)(2)(A) must prove

(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

In re Harmon, 250 F.3d 1240, 1246 (9th Cir. 2001). Accord In re Eashai, 87 F.3d 1082 (9th Cir. 1996). See also In re Ettell, 188 F.3d 1141 (9th Cir. 1999); In re Kirsh, 973 F.2d 1454, 1457-61 (9th Cir. 1992); Rubin v. West, 875 F.2d 755, 759 (9th Cir. 1989). A "false pretense" involves an implied representation or conduct intended to create and foster a false impression. In re Moen, 238 B.R. 785, 791 (8th Cir. BAP 1999). A false pretense can include a "mute charade," where the debtor's conduct is designed to convey an impression without oral representation. In re Felton, 197 B.R. 881, 889 (N.D. Cal. 1996)(citing In re Begun, 136 B.R. 490, 494 (Bankr. S.D. Ohio 1992)); In re Patten, 225 B.R. 211, 215 (Bankr. D. Or. 1998)("A claim of false pretenses may be premised on misleading conduct without an explicit statement.").

Intent may be inferred from the totality of the circumstances. In re Gertsch, 237 B.R. 160, 167 (9th Cir. BAP 1999). Summary judgment is rarely granted where the issue is intent. Provenz v. Miller, 102 F.3d 1478, 1489 (9th Cir. 1996).

Reliance on the debtor's misrepresentation must be justifiable.

The general rule is that a person may justifiably rely on a representation even if the falsity of the representation could have been ascertained upon investigation. In other words, negligence in failing to discover an intentional misrepresentation is no defense. However, a person cannot rely on a representation if he knows that it is false or its falsity is obvious to him. In sum, although a person ordinarily has no duty to investigate the truth of a representation, a person cannot purport to rely on preposterous representations or close his eyes to avoid discovery of the truth.

In re Apte, 180 B.R. 223, 229 (9th Cir. BAP 1995), quoted with approval in Eashai, 87 F.3d at 1090.

Plaintiffs rely extensively on <u>Cohen v. de la Cruz</u>, 523 U.S. 213 (1998), and compare the facts in this case to the facts underlying the determination of nondischargeability in that case. Their reliance is not particularly useful in this case. In <u>Cohen</u>, there had been a trial at which the trial court found fraud. The issue before the Supreme Court was whether treble damages are nondischargeable under § 523(a)(2), not whether the facts established at trial supported the finding of fraud. Here, the issue is whether there is a genuine issue of material fact with regard to the § 523(a) claims. <u>Cohen</u> is not instructive on that question.

A. <u>Misrepresentation</u>

Plaintiffs argue that debtor obtained funds from them through false pretenses and false representations.

As evidence of this element with regard to the charges for utility service, they point to findings by the state court that debtor "caused BBM to violate ORS 90.315(4) through his own contrived plan to 'avoid losing money on electrical charges' that BBM owed to its utility provider[,]" and that debtor directed staff to charge tenants more per KWH for electricity than what the utility was charging the park, and to tell tenants that they were paying the same rate as the utility was charging, which "was patently false." Klingbeil Declaration, Exh. 2 at p.4. Plaintiffs argue that this finding establishes, as a matter of law, that debtor used false pretenses to obtain inflated payments from tenants for their electrical services.

As evidence of this element with regard to the meter reading fees, plaintiffs rely on the state court's finding that the landlord – BBM – charged a meter reading fee that was not disclosed in the tenants' rental agreements, and showed on the tenants' monthly statement as a "PGE meter fee." Klingbeil Declaration, Exh. 18 at p.2. They also point to debtor's admission that he understood he could charge tenants "as much or equal or less than what PGE was charging for meter-reading fees." Klingbeil Declaration, Exh. 19 at p.1536.

This evidence does not establish, as a matter of law or undisputed fact, that debtor's conduct was a misrepresentation or that he used false pretenses to obtain payments from his tenants.

The preclusive effect of a state court judgment in a subsequent federal action is determined by the law of the state in which the judgment was rendered. <u>In re Nourbakhsh</u>, 67 F.3d 798, 800 (9th Cir. 1995). The judgment on which plaintiffs rely was entered in an Oregon state court, therefore Oregon issue preclusion law applies.

In Oregon, there are five requirements for application of issue preclusion: (1) the issue in the two proceedings was identical; (2) the issue was actually litigated and essential to a final decision on the merits; (3) the party sought to be precluded had a full and fair opportunity to be heard on the issue; (4) the party sought to be precluded was a party to the earlier proceeding; and (5) the earlier proceeding was the type of proceeding to which the court will give preclusive effect. <u>Nelson v. Emerald People's Util. Dist.</u>, 318 Or. 99, 104, 862 P.2d 1293 (1993). "[T]he party asserting issue preclusion bears the burden of proof on the first, second, and fourth factors, after which the party against whom

preclusion is asserted has the burden on the third and fifth factors." <u>Barackman v.</u>
<u>Anderson</u>, 214 Or. App. 660, 667, 167 P.3d 994 (2007).

<u>In re Coelho Dairy</u>, 605 B.R. 210, 216 (Bankr. D. Or. 2019) (footnote omitted).

Neither finding by the state court is preclusive of misrepresentations or false pretenses in this action. The first finding, that debtor directed staff to falsely represent that the charges they were paying were the same as were being charged by the utilities, was made in the court's ruling on whether to pierce the corporate veil of B & J, to hold debtor liable for the acts of the corporation. Klingbeil Declaration Exh. 2 at p.2. In making the determination of whether to pierce the corporate veil, the state court applied the factors set out in <u>Amfac Foods, Inc. v.</u>
<u>Internat'l Systems and Controls Corp.</u>, 294 Or. 94 (1982). The finding on which plaintiffs rely was in the court's discussion of the second prong of that test, which requires a showing that "[t]he shareholder engaged in wrongful conduct" with respect to the corporation. Klingbeil Declaration Exh. 2 at p.2. That prong of the test requires some element of wrongdoing; it does not require a finding of misrepresentation or false pretenses. Further, the court also found wrongdoing in the fact that debtor caused the corporation to retaliate, in violation of ORS 90.385(1). Presumably, either finding of wrongdoing would have sufficed for purposes of piercing the corporate veil.

Because the issue in the state court action regarding piercing the corporate veil is not identical to the element of misrepresentation or false pretenses required for a determination of nondischargeability under § 523(a)(2)(A), the state court's finding does not establish, as a matter of law, misrepresentation with regard to the charges for electrical service.

The second finding on which plaintiffs rely, that "the landlord" (which was BBM, not debtor) charged a meter reading fee that was not disclosed in the rental agreement, does not establish a misrepresentation. This "finding" is included in the state court's letter ruling about whether to award attorney fees under the fee-shifting statute, ORS 90.255. Klingbeil Declaration, Exh. 18 at p.1, 2. This "finding" was merely a description of the earlier determinations; there was no issue for purposes of fee shifting of whether debtor had made a misrepresentation. Therefore, the issue decided in that ruling was not identical to the misrepresentation finding that is necessary under § 523(a)(2)(A).

Plaintiffs also point to what they refer to as debtor's "admission" that he knew he could charge tenants fees for reading the meters that PGE billed to the park for reading the fees. The evidence provided in support of this admission is Exh. 19 to the Klingbeil Declaration. It is unclear what this exhibit is; Klingbeil's declaration says that it is a copy of "excerpts taken from the deposition of William Berman in the <u>Hathaway</u> case." Klingbeil Declaration at ¶ 4. However, as I explained above, the exhibit includes comments by the court, making it clear that this transcript is not from a deposition.

Even assuming that the exhibit should be considered, at most the admission that debtor knew he could charge only as much as PGE charged for reading the meters creates an issue of fact whether the funds he obtained through charging the meter reading fees were based on a misrepresentation.

Plaintiffs have not demonstrated that there is no dispute of facts with regard to a misrepresentation that resulted in the judgment against debtor. Therefore, summary judgment will be denied.

B.     Intent

Because there is a question of fact with regard to a misrepresentation, I could deny summary judgment and decline to address the issue of intent. However, I will explain briefly why plaintiffs have not demonstrated the intent element, either.

Summary judgment is rarely granted where intent is an issue. Provenz, 102 F.3d at 1489-90. This is not one of the unusual cases where the evidence is so clear on the issue that summary judgment may be granted.

First, the state court's determination that debtor caused his business entity to violate ORS 90.315(4) did not require a finding of intent. That statute prohibits charging more for utility services than the landlord is charged by the utility, and from charging fees relating to utilities that are not disclosed in the rental agreements. Violations of the statute allow the tenant to recover damages as set out in the statute. ORS 90.315(4)(f). There is no element of intent included in the state statute. Therefore, any finding of intent was not necessary to the state court's decision.

Second, the state court found that debtor "caused BBM to violate ORS 90.315(4) through his own contrived plan to 'avoid losing money on electrical charges' that BBM owed to its utility provider[,]" and that debtor directed staff to charge tenants more per kilowatt hour for electricity than what the utility was being charged, and to tell tenants that they were paying the same rate as the utility was charging, which "was patently false." Klingbeil Declaration Exh. 2 at p.4. As I explained above, the issue in the state court action was not identical to the issue here, which is whether debtor intended to mislead plaintiffs. The findings related to whether debtor engaged in misconduct as to BBM such that the corporate veil of B & J should be pierced. Intent was not at issue.

In addition, that finding does not establish debtor's intent to defraud plaintiffs. The state court in fact found to the contrary in its Order on Piercing the Corporate Veil, Henderson Declaration Exh. B at p.2, where it found that "Plaintiffs failed to produce any evidence that Berman made any intentional misrepresentations individually or on behalf of BBM and/or B & J." This finding at the very least creates a question of fact whether debtor' misrepresentations, to the extent there were misrepresentations, were intended to deceive plaintiffs. Therefore, there is a question of fact whether debtor intended to deceive, and summary judgment must be denied.

C.     Other elements of § 523(a)(2)(A) claim

Finally, I could not grant summary judgment on the § 523(a)(2)(A) claims in any event, because plaintiffs did not discuss or point to any evidence in support of the final two elements of a claim under this section: justifiable reliance and damage caused as a result of that justifiable

reliance.  Without evidence establishing each element, plaintiffs are not entitled to judgment as a matter of law.

Summary judgment will be denied on Claims #1 and #2.

2.  <u>Claims #3, #4, and #5: § 523(a)(6)</u>

Plaintiffs allege that the debt represented by the state court judgment is nondischargeable under § 523(a)(6) as a willful and malicious injury.  Claim #3 relates to the violation of ORS 90.315(4) by charging electrical fees in excess of the charges by the utility; Claim #4 relates to the violation of ORS 90.315(4) by charging meter reading fees in excess of what PGE charged; and Claim #5 relates to violation of ORS 90.385, retaliation by raising rents after the state court ruled that debtor had violated ORS 90.315(4).

Section 523(a)(6) excepts from discharge debts for willful and malicious injury.  The injury must be both willful and malicious; the two requirements are separate and each must be considered.  <u>In re Barboza</u>, 545 F.3d 702, 706 (9th Cir. 2008).

A.  <u>Willful conduct</u>

For conduct to be "willful" under this statute, the debtor's act must be akin to an intentional tort under state law, and the debtor must intend the consequences or injury resulting from that act rather than just the act itself.  <u>Kawaauhau v. Geiger</u>, 523 U.S. 57 (1998).  Conduct is willful "when there is either a subjective intent to harm, or a subjective belief that harm is substantially certain."  <u>In re Su</u>, 290 F.3d 1140, 1144 (9th Cir. 2002).  Debts arising from either reckless or negligent conduct are not "willful" under § 523(a)(6).  <u>Id.</u> at 1143, citing <u>Geiger</u>.

In determining the debtor's state of mind, the court "may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action."  <u>Id.</u> at 1146 n.6.

i.  <u>Violations of ORS 90.315(4) (Claims #3 and #4)</u>

In support of their argument that debtor's conduct that violated ORS 90.315(4) was willful, plaintiffs rely on the state court's finding that debtor

caused BBM to violate ORS 90.315(4)(c) through his own contrived plan to "avoid losing money on electrical charges" that BBM owed to its utility provider.  He directed BBM staff to charge tenants a higher rate per KWH than the utility provider charged by BBM.  The evidence revealed that [debtor] instructed staff to inform tenants they would be charged [12 cents] per KWH, which they were told was the same rate the utility charged BBM.  That was patently false.

Klingbeil Declaration Exh. 2 at p.4.  The state court also found that debtor, "without consistent disclosure" in the rental agreements, charged each tenant a monthly meter reading fee that exceeded the amount charged by the utility.  <u>Id.</u>

These findings do not establish as a matter of law that debtor's conduct in causing BBM
to charge the tenants fees that violated ORS 90.315(4) were willful as that term is used in
§ 523(a)(6).  First, the finding is not binding on this court as a matter of issue preclusion.  As I
explained above, one element for issue preclusion under Oregon law is that the issues decided in
the earlier action are identical to the issues to be decided in the subsequent action.  The state
court's findings set out above were part of the court's determination that it should pierce the
corporate veil of BBM's sister corporation, B & J.  Klingbeil Declaration Exh. 2 at 2.  In making
this determination, the court needed to find that debtor, as a shareholder of B & J, engaged in
wrongful conduct with respect to BBM.  Nothing in the ruling indicates that the wrongful
conduct must be tortious, involving an intent to injure.  Further, the finding relates to wrongful
conduct as to BBM, not as to plaintiffs.

To the extent the finding could be considered as evidence of willfulness, it is directly
contradicted by the court's finding in its dismissal of an allegation in the claim for piercing the
corporate veil that debtor "made one or more material and intentional misrepresentations on
behalf of B & J Properties and BBM that caused harm to [plaintiffs]."  Henderson Declaration
Exh. A at p.16.  In dismissing that allegation, the state court found that "Plaintiffs failed to
produce any evidence that [debtor] made any intentional misrepresentations individually or on
behalf of BBM and/or B & J."  Henderson Declaration Exh. B at 2.  This at least creates a
question of fact regarding willfulness.

  ii.  Violation of ORS 90.385 (Claim #5)

Plaintiffs argue that summary judgment is warranted on the retaliation claim, based on
the state court's finding that debtor raised the rent in response to and because of the court's
ruling that he could not overcharge tenants for electricity and meter reading fees, thereby
retaliating in violation of ORS 90.385.  Klingbeil Declaration Exh. 12 at pp.3-4.

This finding does not establish willfulness under § 523(a)(6).  As the Oregon Supreme
Court has explained, ORS 90.385 does not contain an intent element:

> We conclude . . . that the legislature did not intend to require that a tenant prove that the
> tenant's protected act caused the landlord actual or perceived injury or that the landlord
> intended to cause the tenant injury in return; rather, the statute is satisfied if the landlord
> made the decision to act because of the tenant's protected activity.

Elk Creek Management Co. v. Gilbert, 353 Or. 565, 574 (2013).  Therefore, even if the state
court's ruling could be read as a finding that debtor had an intent to injure plaintiffs or a
subjective belief that injury was substantially certain, finding intent was not essential to the
court's conclusion that debtor had retaliated against plaintiffs.  See Nelson v. Emerald People's
Util. Dist., 318 Or. 99, 104 (1993).

In addition, the finding that debtor raised the rent in response to the court's ruling that he
was prohibited from collecting the excess electrical charges and the meter reading fees does not
establish as a matter of law that he intended to cause harm to plaintiffs or believed that harm was

substantially certain to occur.  There was evidence that he raised the rent in order to assure that the lender did not call the loan, not in order to injure plaintiffs.  Berman Declaration at p.4.

There is a question of fact whether debtor's conduct in raising the rent to offset the reduced utility charges was willful conduct within the meaning of § 523(a)(6).

B.      Malicious conduct

As explained above, a debt is nondischargeable under § 523(a)(6) only if it is both willful and malicious.  Because I have already concluded that there is a question of fact whether the conduct giving rise to the state court judgment is willful, I will deny summary judgment.  I will nevertheless discuss briefly why there is also a question of fact about whether debtor's conduct was malicious.

A malicious injury is "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse."  In re Jercich, 238 F.3d 1202, 1209 (9th Cir. 2001) (quoting In re Bammer, 131 F.3d 788, 791 (9th Cir. 1997)).  A debtor's reliance on the advice of counsel may provide just cause or excuse for conduct that causes harm.  See, e.g., In re Treon, 2008 WL 65575 at *7 (Bankr. D. Or. 2008) (a debtor's reasonable reliance on advice of counsel provides an "excuse" for the debtor's conduct).

Even assuming, without deciding, that plaintiffs have established the first three elements of this prong as a matter of law, there is a question of fact whether the conduct resulting in violation of the state statutes was done without just cause or excuse.

Debtor provided evidence that, with regard to the utility charges and meter reading fees, he confirmed that his utility billing practices and meter reading charges were "proper and legal" with governing agencies, including the Public Utility Commission, the Oregon State Multi-Family Housing, and PGE.  Berman Declaration at p.3.  This provides evidence that debtor had a "just cause or excuse" for making the charges he did, raising a question of fact whether his conduct was malicious.  He also provided evidence that, with regard to the increase in rent that the state court found was retaliatory in violation of ORS 90.385, he consulted with counsel and implemented the rent increase based on counsel's advice.  Id. at p.4.  There is no evidence in the summary judgment record that his reliance on the advice of counsel was unreasonable, even if it turned out to be wrong.

Because reliance on the advice of counsel may provide just cause or excuse for conduct that causes harm, Treon, 2008 WL 65575 at *7, there is a question of fact whether debtor's conduct in raising the rents was done without just cause or excuse, and therefore whether it was malicious under § 523(a)(6).

I will deny summary judgment on Claims #3, #4, and #5.

CONCLUSION

There are issues of fact that preclude entry of summary judgment on all of the § 523 claims. Because summary judgment will be denied, I will not address the argument that all damages arising out of the state court judgment, including statutory damages and attorney fees, are nondischargeable.

Mr. Henderson should submit the order denying summary judgment.


Sincerely,


PETER C. MCKITTRICK
Bankruptcy Judge